UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PANAGIOTIS KASSERIS, *individually and on behalf of all other similarly situated employees*,

*Plaintiff*,

– against –

ZA & D SERVICE STATION, INC.; ANTHONY KOULIZAKIS; NIKOLAS KOULIZAKIS

*Defendants*.

---

**MEMORANDUM & ORDER**
23-cv-06281 (NCM) (SDE)

**NATASHA C. MERLE**, United States District Judge:

Panagiotis Kasseris brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), and the New York Labor Law, N.Y. Lab. L. § 190 *et seq*. ("NYLL"). *See* Second Am. Compl. ("SAC") ¶ 1, ECF No. 29. Before the Court is defendants' motion for summary judgment and sanctions. *See generally* Mot.[1] For the reasons stated below, defendants' motion for summary judgment is **GRANTED in part, DENIED in part.** The Court defers ruling on defendants' motion for sanctions.

---

[1]     The Court hereinafter refers to defendants' Memorandum of Law in Support of their Motion for Summary Judgment, Sanctions & Preclusion of Expert Witnesses, ECF No. 49, as the "Motion"; plaintiff's Memorandum of Law in Opposition to Defendant's Motion, ECF No. 50, as the "Opposition"; and defendants' Brief Memorandum of Law in Further Support of Defendants' Motion, ECF No. 51, as the "Reply."

## BACKGROUND

### I.    Factual Background[2]

Defendant ZA & D Service Station ("ZAD") is an automotive body shop, repair, and service station in Long Island City, New York. *See* Defs.' 56.1 Statement ("56.1") ¶ 13, ECF No. 49-2; Pl.'s Counter 56.1 Statement ("Counter 56.1")[3] ¶ 13, ECF No. 50-3. Defendant Anthony Koulizakis has been ZAD's sole owner-operator and president since at least 2017. *See* Decl. of Derrick Storms Ex. 2 ("Anthony Tr.") at 6:20–8:2, ECF No. 50-5. Anthony's father, defendant Nikolas Koulizakis, was ZAD's prior owner-operator. Anthony Tr. 7:8–8:12. ZAD currently has about seven employees, Anthony Tr. 11:10–13, and is open Monday through Friday from 8:00 a.m. to 6:00 p.m., and on Saturdays from 8:00 a.m. to 3:00 p.m. Counter 56.1 ¶ 16.

Plaintiff Panagiotis Kasseris is an autobody repairman originally from Greece. *See* Counter 56.1 ¶ 3; *see also* Decl. of Derrick Storms Ex. 1 ("Pl.'s Tr.") at 11:13–12:6, ECF No. 49-7. Kasseris moved to the United States in 2017, Pl.'s Tr. 11:25–12:6, and met Anthony the following year, Anthony Tr. 13:12–18. At some point in 2018, Kasseris visited Anthony

---

[2]    The following facts, drawn from the parties' Local Civil Rule 56.1 Statements and evidentiary submissions, are undisputed unless otherwise noted.

[3]    Several of plaintiff's responses in his Counter 56.1 are without citations to admissble evidence in violation of the Local Rules of the Eastern District of New York. *See* Counter 56.1 ¶¶ 26–29; *see also* Loc. Civ. R. 56.1(d) ("Each statement by the . . . opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)"). Thus, to the extent that plaintiff "has offered no admissible evidence to refute" a particular fact in defendants' 56.1, "that fact is deemed admitted." *Brown v. City of New York*, No. 11-cv-01068, 2013 WL 491926, at *1 n.1 (S.D.N.Y. Feb. 8, 2013) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)); *see also Henry v. McDonald*, 531 F. Supp. 3d 573, 583 (E.D.N.Y. 2021).

at ZAD and Anthony "gave him some jobs to do." Anthony Tr. 20:17–23. Kasseris worked at ZAD from that point onward until 2022, although the parties dispute the extent of plaintiff's work. *See* Pl.'s Tr. 7:6–7; Anthony Tr. 15:12–16. Specifically, Kasseris testified that he and Anthony agreed that plaintiff would work at ZAD five days a week for forty hours at a rate of $37.50 per hour. Pl.'s Tr. 53:22–25. Anthony claims that he had a different arrangement with plaintiff; Anthony testified that plaintiff was more "[l]ike a filler," that is, defendants would call plaintiff "to come and help . . . finish some jobs" whenever ZAD had "extra work." Anthony Tr. 23:20–25.

Kasseris testified that his regular work schedule at ZAD ended up being 57 hours per week. Pl.'s Tr. 49:22. According to Kasseris, he regularly worked Monday through Friday from 8:00 a.m. to 6:00 p.m., and on Saturday from 8:00 a.m. to 3:00 p.m., in other words, all of ZAD's hours of operation. *See* Pl.'s Tr. 61:13–17; *see also* Counter 56.1 ¶ 16. Moreover, despite his agreement with Anthony, plaintiff was only paid approximately $600 per week for at least the first two years he worked at ZAD, rather than $37.50 per hour. *See* Decl. of Panagiotis Kasseris ("Pl.'s Decl.") ¶¶ 8, 13, ECF No. 50-2. Plaintiff admits that he "stopped working at ZAD for periods from 2018 to 2022," Counter 56.1 ¶ 7, but attests that he worked at ZAD for most of 2018, 2019, 2021, and 2022, along with a two month period in 2020, *see* Pl.'s Decl. ¶ 9. Plaintiff attributes these gaps in work history at ZAD, at least in part, to the company's business. That is, whenever "the business was slow, they would . . . get rid" of plaintiff. Pl.'s Tr. 49:13–18.

Defendants dispute plaintiff's characterization of his working relationship with ZAD. First, Anthony testified that defendants considered plaintiff to be "a piecemeal kind of filler kind of guy[,]" Anthony Tr. 26:3–6, and did not work there consistently until 2022, Anthony Tr. 21:14–22:3. Thus, in defendants' view, plaintiff "was never considered

a full-time employee[.]" Anthony Tr. 16:3–5. Accordingly, defendants never issued plaintiff any wage statements, wage notices, pay stubs, or otherwise kept track of plaintiff's hours. *See* Anthony Tr. 15:22–16:9, 31:6–7. Defendants also dispute the nature of plaintiff's compensation. According to Anthony, plaintiff's hourly wage was $21 per hour the entirety of his tenure at ZAD. Anthony Tr. 37:9–15. Anthony testified that there may have been some periods in which plaintiff "worked a full week with overtime," but again, no one at ZAD "kept track of the hours that [plaintiff] worked[.]" Anthony Tr. 31:3–22.

## II.     Procedural Background

Plaintiff originally sued defendants in the Southern District of New York in February 2023 before the case was transferred to the Eastern District of New York on August 2, 2023. Counter 56.1 ¶¶ 17–19. Plaintiff amended his complaint twice, and in the SAC brings claims for unpaid minimum wage and overtime pursuant to the FLSA and the NYLL, along with other claims based on alleged violations of the NYLL. Counter 56.1 ¶ 2; *see also* SAC ¶¶ 60–121. Although the SAC originally brought class claims, no class was ever certified. Counter 56.1 ¶ 22**.** During the pendency of this action, plaintiff filed a personal injury action in New York State court against different defendants unrelated to plaintiff's wage claims. Counter 56.1 ¶ 22; *see also* Decl. of Kevin Sean O'Donoghue Ex. F, ECF No. 49-8.

On August 7, 2025, defendants moved for summary judgment. *See* Mot. Plaintiff opposes defendants' motion. *See* Opp'n.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021).[4] Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

If the non-moving party has the burden of proof at trial, "the moving party need only demonstrate that there is a lack of evidence to support the non-movant's claim." *Dolan v. Cassella*, 543 F. App'x 90, 90 (2d Cir. 2013) (summary order); *see also Miller v. Terrillion*, 436 F. Supp. 3d 598, 600 (E.D.N.Y. 2020) ("Summary judgment is appropriate if the nonmoving party who bears the burden of proof at trial fails to offer proof concerning an essential element of the nonmoving party's case."). Where the movant satisfies this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial and may not rest upon the mere allegations or denials of his pleading." *Dolan*, 543 F. App'x at 91. The non-moving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). That is, "there must be sufficient evidence from which a reasonable finder of fact could find in the non-movant's favor." *Dolan*, 543 F. App'x at 91. The court need only consider admissible evidence, and is not obligated to conduct an independent review of the record to identify a factual dispute. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).

---

[4]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

## DISCUSSION

Defendants seek summary judgment in their favor on plaintiff's claims under the FLSA (Counts I and III), *see* Mot. 12, and argue that the Court should decline to exercise supplemental jurisdiction over plaintiff's NYLL claims (Counts II, IV, V, VI, VII, and VIII), *see* Mot. 13. Defendants also raise merits arguments as to plaintiff's minimum wage, overtime, weekly payment, and timely payment claims pursuant to the NYLL (Counts II, IV, V, and VI). *See* Mot. 8, 13.[5]

Defendants argue that summary judgment in their favor is warranted for at least four reasons. First, defendants contend that plaintiff's case "rests on multiple pleadings that directly contradict [p]laintiff's own testimony and documents, proving there is no merit to the claims[.]" Mot. 7. Specifically, defendants argue that (1) plaintiff's complaints prior to the operative complaint—the SAC; (2) plaintiff's proposed third amended complaint;[6] and (3) plaintiff's state court complaint, all contain "sworn factual statements" that are "in conflict" thus making the instant action "untenable." Mot. 5–6.

---

[5]    In their Motion, defendants also seek to preclude plaintiff's expert witnesses on the grounds that plaintiff failed to timely disclose them. Mot. 22. However, as plaintiff explains in his Opposition, "[p]laintiff has not retained any experts in this matter" and defendants apparently moved "to exclude a non-existent expert." Opp'n 22. Therefore, the Court deems the branch of defendants' Motion seeking to preclude expert witnesses to be moot.

[6]    Plaintiff moved for leave to file a third amended complaint to include an additional claim for breach of contract. *See* Mem. of Law in Supp. of Pl.'s Mot. to File a Third Am. Compl. 1, ECF No. 39-1. By report and recommendation ("R&R") dated January 13, 2025, Magistrate Judge Robert M. Levy recommended denying plaintiff's motion on the grounds that permitting plaintiff to amend his complaint a third time, months after the close of discovery, "would cause undue prejudice to defendants." R&R 4. Judge Levy further concluded that plaintiff's proposed amendment would be futile in light of plaintiff's failure "to plead facts sufficient to support a facially plausible breach of contract claim." R&R 5. The undersigned adopted the R&R in its entirety and denied plaintiff's motion on January 31, 2025. Mem. & Order, ECF No. 42.

Second, defendants assert that ZAD "denies it was plaintiff's employer" under the FLSA and the NYLL because "[p]laintiff was at most an occasional worker who was paid on a project basis." Mot. 14. Third, defendants contend that plaintiff's documentary evidence "disprove[s]" that they violated the FLSA and the NYLL. Mot. 12. In particular, defendants argue that paychecks issued to plaintiff "refute" his claim that he was not paid the minimum wage or overtime wages. *See* Mot. 4. Finally, defendants argue that plaintiff's FLSA claims do not fall within the applicable statute of limitations. *See* Mot. 14–16. Defendants also urge the Court to decline to exercise supplemental jurisdiction over plaintiff's NYLL claims because the Court "is expected to dismiss any claims relating to the FLSA," and thus "[t]his matter is more appropriately adjudicated in New York Courts." Mot. 13. As set forth below, because the Court declines to dismiss all of plaintiff's FLSA claims, it continues to exercise supplemental jurisdiction over plaintiff's state law claims. Accordingly, the Court addresses defendants' arguments for summary judgment as to each of plaintiff's claims.

## I.    Factual Inconsistencies

At the outset, the Court rejects defendants' invitation to consider nonoperative pleadings, such as plaintiff's proposed third amended complaint and prior complaints in this action, in determining whether plaintiff raises a triable issue of fact. Summary judgment concerns admissible evidence in the record. *See BMaddox Enters. LLC v. Milad Oskouie, Osko M Ltd.*, No. 17-cv-01889, 2021 WL 3675072, at *5 (S.D.N.Y. Aug. 18, 2021). And, as a general matter, "allegations in a pleading are not considered affirmative evidence with respect to a motion for summary judgment." *Williams v. Noel*, No. 16-cv-02188, 2022 WL 4292229, at *3 n.5 (S.D.N.Y. Sept. 16, 2022). While it's true that this principle does not apply to verified pleadings, that is, a complaint whose contents are

sworn to be true under penalty of perjury, *see id.*, none of the complaints filed in this action were verified, *see* Compl. 20, ECF No. 1; First Am. Compl. 20, ECF No. 13; SAC 21; Proposed Third Am. Compl. 31, ECF No. 39-6. *See also Brandon v. Kinter*, 938 F.3d 21, 26 n.5 (2d Cir. 2019) ("[A]llegations in the complaint can be considered as evidence for summary judgment purposes" only where the complaint has been "sworn under penalty of perjury"); *Concepts NREC, LLC v. Qui*, No. 20-cv-00133, 2025 WL 3012209, at *7 (D. Vt. Oct. 28, 2025) ("Unless a pleading is verified, it would be error for a court to rely on the allegations in the pleading as evidence on summary judgment."). Thus, defendants' attempt to frame plaintiff's complaints in this action as "sworn pleadings" containing "sworn statements" is both incorrect and unavailing. Mot. 11.

Defendants also highlight allegations in a verified complaint filed by plaintiff in a state court personal injury action–concerning events unrelated to the instant action and filed against a nonparty—as well as "sworn factual statements" in certain of plaintiff's discovery responses. *See* Mot. 4–5. Defendants assert that the various "sworn factual statements are in conflict," Mot. 6, thus demonstrating a "lack of credible claims," Mot. 5. But this argument fails on its own terms at the summary judgment stage because "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). Put differently, whatever "material differences" exist in the record pertaining to "when [p]laintiff worked, how much he was paid, and in what capacity," Mot. 4, such differences are proper fodder for cross-examination at trial, not a basis for the court to award summary judgment. *See Karatzas v. Herricks Union Free Sch. Dist.*, No. 15-cv-02888, 2017 WL 3084409, at *20 (E.D.N.Y. July 18, 2017) ("[T]he mere existence of inconsistencies in the record does not

provide a proper basis to grant summary judgment[.]"); *Thomas v. City of New York*, No. 09-cv-03162, 2010 WL 5490900, at *9 (S.D.N.Y. Dec. 22, 2010) ("Discrepancies in a party's testimony are not properly resolved on a motion for summary judgment."); *see also Butler v. Gonzalez*, No. 09-cv-01916, 2010 WL 3398150, at *10 (S.D.N.Y. Aug. 26, 2010) (explaining that inconsistency between pleadings and testimony may be "useful for impeachment purposes at trial, but it is not grounds for granting [the defendants] summary judgment").

## II. FLSA Coverage

Defendants argue that they are entitled to summary judgment because plaintiff is not covered by the FLSA's provisions. *See* Mot. 14. Specifically, "ZAD denies [that] it was [p]laintiff's 'employer' under the definition in the FLSA." Mot. 14. Defendants contend that plaintiff was only "an occasional worker who was paid on a project basis," Mot. 14, i.e., an independent contractor, and thus he is not considered ZAD's "employee" for purposes of the FLSA. Mot. 14. Defendants also argue that "there has been no evidence that any of the individual defendants had any liability to [] [p]laintiff[] for [his] FLSA claim[]." Mot. 14.

### A. Plaintiff's Employee Status

The FLSA's minimum and overtime wage protections apply "only to employees, not to independent contractors." *Vicente v. Ljubica Contractors LLC*, No. 18-cv-00419, 2025 WL 100897, at *5 (S.D.N.Y. Jan. 14, 2025) (quoting *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 534 (2d Cir. 2016)). Pursuant to the FLSA, "employee" is "broadly defined as . . . any individual employed by an employer." *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 246 (E.D.N.Y. 2024) (citing 29 U.S.C. § 203(e)(1)). The question

of whether an employee-employer relationship exists "is one of economic reality." *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 305 (E.D.N.Y. 2009).

In assessing whether a worker is an employee or independent contractor for purposes of the FLSA, courts look to various factors including: "(1) the degree of control exercised by the employer over the worker[], (2) the worker['s] opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988); *see also Kalloo v. Unlimited Mech. Co.*, 977 F. Supp. 2d 187, 200 (E.D.N.Y. 2013). The forgoing factors are not exhaustive, nor is any single factor dispositive, as the economic reality test encompasses the "totality of the circumstances." *Brock*, 840 F.2d at 1059.

Ultimately, the question is "whether the putative employee is economically dependent on the putative employer." *Velu*, 666 F. Supp. at 306. Put differently, the central inquiry is whether, as a matter of economic reality, "the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for themselves." *Brock*, 840 F.2d at 1059; *see also Vicente*, 2025 WL 100897, at *5 ("The basic question is whether, under the totality of the circumstances and as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service, in which case they are employees, or whether the workers are in business for themselves, and thus independent contractors.") (quoting *Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 139 (2d Cir. 2017)). Because this inquiry is fact-intensive, the determination of employment status is "rarely suitable for summary judgment." *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-cv-05735, 2019 WL 1244291, at *9

(S.D.N.Y. Mar. 18, 2019); *Brock*, 840 F.2d at 1059 (explaining that "[t]he existence and degree of each factor" of the economic reality test "is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors—is a question of law").

To support their contention that plaintiff was an independent contractor, defendants point to paychecks plaintiff received from other auto service stations during the period of plaintiff's alleged employment at ZAD, and argue that this demonstrates plaintiff only worked at ZAD "when he was not working at other jobs." Mot. 14. Defendants also assert, without citing to any record evidence, that plaintiff set his own work schedule, used his own tools, was never "terminated" from ZAD, and only worked for defendants "when there were projects for him and he was available." Mot. 14.

Defendants fail to demonstrate that, as a matter of law, plaintiff was an independent contractor for purposes of the FLSA.[7] First, evidence in the record indicates that there are triable issues of fact with respect to the "existence and degree" of certain of the economic reality test factors. *Brock*, 840 F.2d at 1059. For instance, as to the degree of control factor, although defendants assert that plaintiff "worked on his own schedule,"

---

[7]    Defendants' argument on this score also fails because their briefing does not "contain any meaningful legal argument, with supporting cases and other authorities, as to whether [defendants] come within the definition of employer under the FLSA and NYLL." *Chui v. Am. Yuexianggui of Li LLC*, No. 18-cv-05091, 2021 WL 4482656, at *2 (E.D.N.Y. July 26, 2021), *report and recommendation adopted*, 2021 WL 4480736 (E.D.N.Y. Sept. 30, 2021). Indeed, defendants do not cite a single legal authority in either their Motion or Reply in support of their argument that they were not "employers" under the FLSA or the NYLL, nor do they address any of the factors relevant to whether plaintiff was an employee or independent contractor under the FLSA. *See* Mot. 14; Reply 10; *see also Borowski v. Mordino*, No. 16-cv-00999, 2020 WL 6083425, at *1 (W.D.N.Y. Oct. 15, 2020) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . and put flesh on its bones.") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

Mot. 14, plaintiff's deposition testimony suggests otherwise, *see, e.g.*, Pl.'s Tr. 122:14–25 (testifying that the days he was "absent from the business" was due to defendants sending plaintiff home because there was "not a lot of business in the store"). *See also Vicente*, 2025 WL 100897, at *5 (reasoning that "factual disputes as to the degree of control [the] [d]efendants exercised over [the] [p]laintiffs' schedules and the manner in which [the] [p]laintiffs performed their work . . . suggest[ed] [that] summary judgment [wa]s improper").

There is also a genuine dispute as to the permanence and duration of the parties' working relationship. According to defendants, plaintiff was "[l]ike a filler" who would come to ZAD to help "finish some jobs" when the store had extra work. Anthony Tr. 23:23–25. Thus, according to defendants, plaintiff was not working consistently at ZAD until sometime in 2022. Anthony Tr. 31:6-7. But according to plaintiff, throughout his tenure at ZAD—from 2018 through 2022, *see* Counter 56.1 ¶ 4—his work schedule was Monday through Saturday at full-time employment, *see* Pl.'s Tr. 90:20–92:6. Additionally, while there is evidence that plaintiff did not exclusively and continuously work at ZAD during the entire alleged period of employment, *see* Counter 56.1 ¶¶ 7–10— which weighs in favor of finding that plaintiff was an independent contractor—there also is no evidence that plaintiff had "a fixed employment period," i.e., a start and end date, at ZAD, which weighs in favor of finding that Kasseris was an employee, *Cox v. German Kitchen Ctr. LLC*, No. 17-cv-06081, 2023 WL 8648839, at *7 (S.D.N.Y. Dec. 14, 2023). *See also Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 543 (S.D.N.Y. 2014) ("Generally speaking, independent contractors often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas employees usually work for only one employer and such relationship is continuous and of indefinite

duration.") (quoting *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998)); *Vicente*, 2025 WL 100897, at *6 (concluding that "pieces of the record point[ed] in different directions as to [the permanence and duration] factor" where there was testimony suggesting that the putative employee worked "on a per-job basis with no obligation to continue" but there was also testimony suggesting that the worker's relationship with the company "was ongoing and exclusive").

These disputes as to plaintiff's schedule and the permanence and duration of his working relationship with defendants preclude summary judgment. *See Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 598 (E.D.N.Y. 2012) (explaining that a court may determine whether a worker should be categorized as an independent contractor or employee only "when there are no disputed issues of material fact").

Moreover, there is sufficient evidence in the record such that a reasonable juror could conclude that plaintiff was an employee under the FLSA. For example, there is evidence that plaintiff was given tasks and orders, including instructions as to "what work . . . needed to be done" at ZAD each morning that he worked. Anthony Tr. 38:20–25. Additional evidence demonstrates that plaintiff was supervised while working at ZAD, and was provided supplies or materials needed to complete certain projects. *See* Anthony Tr. 38:22–25 ("I would check on [plaintiff] sporadically, and if he needed any supplies or materials, he would come and tell me."). A letter dated March 27, 2018, on ZAD letterhead expressly states that plaintiff was "currently employed . . . full time" at ZAD. *See* Decl. of Derrick Storms Ex. 7, ECF No. 50-7. Plaintiff was paid an hourly wage for his work at ZAD. *See* Anthony Tr. 37:9–14. And plaintiff's work as an auto body repair man was integral to ZAD's business. Indeed, evidence indicates that plaintiff was "assigned to all body shop duties regarding vehicle damage" at ZAD—an automotive body and repair

shop. Pl.'s Tr. 141:16–22; *see also* Anthony Tr. 42:19–43:6. Construing this evidence in the light most favorable to plaintiff, the Court finds that a rational juror could conclude that plaintiff was a ZAD employee. *See Kalloo*, 977 F. Supp. 2d at 202 (concluding that the plaintiff was an employee and not an independent contractor under the FLSA based on the totality of the circumstances, including because the plaintiff "earned a hourly rate," "worked when and where [the] defendants told him to work," "worked for [the] defendants for nearly two consecutive years," "and [the plaintiff's] work as an HVAC mechanic was integral to [the] defendants' HVAC systems services").

Put differently, the Court cannot conclude, based on the evidence in the record, that plaintiff was in business for himself as opposed to "depend[ent] upon [ZAD] for the opportunity to render service[.]" *Brock*, 840 F.2d at 1059. Indeed, plaintiff testified that although defendants did not pay him at the agreed-upon wage, he nevertheless continued to work at ZAD because he "was in need" and "needed money to pay [his] bills." Pl.'s Tr. 120:7–10; *see also* Pl.'s Tr. 49:13–18 (testifying that he accepted pay below the agreed-upon wage because he "had [a] need for work").

For this reason, defendants' argument that plaintiff "worked for other businesses and himself" at various points during the alleged period of employment does not compel a different conclusion. Mot. 14. Although it is true that "transient workers who typically work for several employers are more like independent contractors than employees," that fact alone is not dispositive. *Cox*, 2023 WL 8648839, at *7; *see also Brock*, 840 F.2d at 1060 ("With respect to permanence of the working relationship, the record indicates that the [plaintiffs] are a transient work force. . . . Nevertheless, th[is] fact[] [is] not dispositive of independent contractor status."). This is so because the "ultimate concern" of the economic reality test is whether, in view of the totality of the circumstances, the worker

14

depends on someone else's business or are in business for themselves. *Brock*, 840 F.2d at 1059. And here, plaintiff adduces evidence that he depended on ZAD in order to render auto body repair services for nearly the entire period of alleged employment. *See* Pl.'s Tr. 18:23–19:2 ("My main work was with [ZAD] . . . I don't think I worked anywhere else, but if by chance some other work would be available I would take it because I was not making a lot of money, or enough money."). Therefore, the Court cannot conclude that plaintiff was in business for himself, and defendants are not entitled to summary judgment on the grounds that plaintiff was an independent contractor—and that ZAD is not an "employer"—for purposes of the FLSA. *See Brock*, 840 F.2d at 1061; *see also Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003) (reasoning that delivery workers were "as a matter of law . . . employees, [and] not independent contractors" where it was "clear, from the economic reality and the totality of circumstances, that the delivery workers depend[ed] upon the . . . defendants for the opportunity to sell their labor and [we]re not in any real sense in business for themselves").

### B. Individual Defendant Liability

Defendants also argue that plaintiff fails to present evidence demonstrating that any of the individual defendants should be held individually liable under the FLSA. Mot. 14. In order to be held liable as an employer under the FLSA, "an individual defendant must possess control over a company's actual operations in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). In addition to the economic reality test distinguishing independent contractors and employees, the Second Circuit "has articulated an economic reality test to determine whether any particular individual is an employer for the purposes of the FLSA." *Ramos*

v. *Guaba Deli Groc. Corp.*, No. 20-cv-04904, 2021 WL 5563714, at *6 (S.D.N.Y. Nov. 29, 2021); *see also Chui*, 2021 WL 4482656, at *2 (explaining that "the Second Circuit has set forth various tests and factors to determine whether a party qualifies as an employer within the meaning of the FLSA and NYLL," and that "[t]he appropriate test to apply depends on the circumstances of the case and the relationship among the alleged employers"). Courts look to whether the individual: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records" (the "*Carter*" factors). *Carter v. Dutchess Comm. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). None of the *Carter* factors are dispositive; the "inquiry is a totality-of-the-circumstances approach[.]" *Ramos*, 2021 WL 5563714, at *6 .

In addition to the *Carter* factors, courts "examine[] whether the individual exercised authority over management, supervision, and oversight of the employer's affairs in general[.]" *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 352 (E.D.N.Y. 2015). Ultimately, the "key inquiry in determining employer status is whether a defendant possessed operational control over the plaintiff-employees." *Rafter v. Everlast Sign & Serv. Inc.*, No. 21-cv-04588, 2025 WL 2240446, at *21 (E.D.N.Y. Aug. 6, 2025). Thus, a plaintiff must provide sufficient evidence showing that the individual defendant exercised "control over employees." *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018). In other words: "[the defendant's] role within the company, and the decisions it entail[ed], directly affect[ed] the nature or conditions of the employees' employment." *Id.*

Plaintiff seeks to recover against ZAD's current and former owner-operators: Anthony Koulizakis and Nikolas Koulizakis, respectively. *See* Opp'n 15–16. For the

reasons set forth below, the Court finds that plaintiff adduces sufficient evidence such that a reasonable juror could conclude that Anthony was plaintiff's employer for purposes of the FLSA. However, plaintiff fails to produce sufficient evidence as to Nikolas's employer status.

### i. Anthony Koulizakis

Contrary to defendants' assertion, *see* Mot. 14, plaintiff does present evidence demonstrating that Anthony was plaintiff's employer for purposes of the FLSA. First, evidence suggests that Anthony had the power to hire employees. *See* Anthony Tr. 20:17–23 ("I didn't have full-time work for [plaintiff], but I gave him some jobs to do."). Second, Anthony set and provided ZAD employees' work schedules, including by setting plaintiff's schedule. *See* Anthony Tr. 10:24–11:9, 39:12–14. Third, Anthony set plaintiff's rate of pay and "was in charge of payroll" at ZAD. Anthony Tr. 24:6–9, 29:19–24; *see also* Pl.'s Tr. 53:22–25 ("When I went to the business of Mr. Zad, Anthony, his agreement with me was he was going to be paying me $37.50, five days, 40 hour work."). Finally, although it's unclear whether Anthony maintained employment records at ZAD, there is evidence suggesting that he was responsible for issuing ZAD employees certain tax forms. *See* Anthony Tr. 12:3–12. Thus, at minimum, three *Carter* factors weigh in favor of finding that Anthony was plaintiff's employer, and summary judgment in defendants' favor is unwarranted. *See Gutierrez v. Skyview Car Wash, Inc.*, No. 22-cv-00755, 2024 WL 1332632, at *7 (E.D.N.Y. Mar. 28, 2024) (reasoning that there was "no basis to conclude that [the individual defendant's] status as an employer [wa]s beyond material dispute" where two *Carter* factors weighed in favor of finding the individual defendant was an employer, and the other two *Carter* factors were neutral).

Moreover, the record indicates that Anthony "exercised authority over management, supervision, and oversight of [ZAD's] affairs in general." *Ethelberth*, 91 F. Supp. 3d at 352–53. Anthony is ZAD's president and sole corporate officer—and has been so for the entire duration of plaintiff's employment. Anthony Tr. 7:18–8:2. Anthony was responsible for payroll and oversaw the amount for which paychecks would be issued. Anthony Tr. 29:19–24. Anthony testified that he was plaintiff's supervisor at ZAD and would check in on plaintiff and "tell him what work . . . needed to be done." Anthony Tr. 38:17–21. Thus, Anthony's "general authority" over ZAD's affairs, together with "the totality of the circumstances[,] establishes that [he] may be held liable as an employer under the FLSA." *Ethelberth*, 91 F. Supp. at 353. Accordingly, defendants' motion for summary judgment as to Anthony's employer status under the FLSA is DENIED. *See id.*

### ii. Nikolas Koulizakis

The employer status of ZAD's former owner-operator, Nikolas, stands on different footing. Anthony Tr. 7:11–13. At some point prior to plaintiff's employment, Nikolas transferred ownership of ZAD to Anthony, his son. *See* Anthony Tr. 7:5–17; *see also* Anthony Tr. 8:8–11. Plaintiff argues that Nikolas is an employer under the FLSA because "he held an ownership interest in . . . and possessed operational control over significant functions of ZAD." Opp'n 15. Plaintiff also claims that Nikolas "had substantial control over [the] working conditions . . . governing . . . [p]laintiff's employment and compensation." Opp'n 15. Specifically, plaintiff asserts that Nikolas determined employees' wages, established schedules, and maintained employment records. Opp'n 15. Plaintiff also points out that Nikolas "signed and issued paychecks at ZAD." Opp'n 15. Thus, in plaintiff's view, this evidence establishes that Nikolas is an employer under the FLSA. *See* Opp'n 15. The Court disagrees.

At the outset, the Court observes that many of plaintiff's arguments as to Nikolas's employer status rely on allegations raised in the SAC. *See* Opp'n 15 (quoting SAC ¶¶ 8–9, 13); *see also* Opp'n 15 ("These *pleadings* sufficiently establish that the individual [d]efendants are employers under the FLSA and the NYLL.") (emphasis added). But as explained above, allegations in an unverified complaint are not evidence and therefore "provide no basis for opposing summary judgment." *Creighton v. City of New York*, No. 12-cv-07454, 2017 WL 636415, at *45 n.47 (S.D.N.Y. Feb. 14, 2017); *see also Hernandez v. Coca Cola Refreshments USA, Inc.*, No. 12-cv-00234, 2013 WL 6388654, at *3 (E.D.N.Y. Dec. 6, 2013) ("[I]t is of course fundamental that allegations in a complaint are not evidence that can defeat a motion for summary judgment.") (citing *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)).

To the extent plaintiff does cite evidence in support of his position, some of the evidence simply does not stand for the proposition which plaintiff suggests. For instance, plaintiff cites to Anthony's deposition testimony in support of his assertion that Nikolas "determined the wages of employees, established the schedules, [and] maintained employee records[.]" Opp'n 16 (citing Anthony Tr. 34:3–6). But the cited portion of the transcript says nothing of the sort. In fact, as previously detailed, Anthony testified that *he* was responsible for setting schedules and determining wages. *See* Anthony Tr. 10:24–11:9, 24:6–9, 29:19–24, 39:12–14. Plaintiff is correct that Nikolas had the authority, and in fact did, sign employee paychecks. Anthony Tr. 29:13–17; *see also* Decl. of Kevin O'Donoghue Ex. I, ECF No. 49-11. However, Anthony disavowed the notion that Nikolas was in charge of compensation or payroll. *See* Anthony Tr. 29:19–21. Anthony clarified that Nikolas "issue[d] the checks in the amounts [Anthony] t[old] him[.]" Anthony Tr. 29:23–25. That is, the evidence supports the reasonable inference that Nikolas was not

involved in payroll except to the extent he signed pay checks as directed by his son, ZAD's owner-operator at the time of plaintiff's employment. Thus, based on the circumstances of the case, this evidence does not move the needle as to whether Nikolas was an employer under the FLSA. *See Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 464 (S.D.N.Y. 2012) (explaining that "the fact that [the individual defendant] sign[ed] paychecks [wa]s not probative" as to the defendant's employer status because the defendant "only sign[ed] paychecks because each check ha[d] to be signed by two of the [r]estaurant's owners" and the defendant was "otherwise not involved in employee compensation").

The only other evidence propounded by plaintiff which bears on the *Carter* factors is his statement that he "was hired by Anthony Koulizakis and Nikolas Koulizakis." Pl.'s Decl. ¶ 4.[8] However, this statement is insufficient to raise a genuine dispute as to Nikolas's

---

[8]    Defendants urge the Court to strike plaintiff's declaration pursuant to the "sham affidavit" rule because it contains "conveniently supplied" new facts for the purposes of opposing defendants' Motion. *See* Reply 6. "However, the sham affidavit rule applies where factual allegations are made for the first time in the non-moving party's affidavit opposing summary judgment *and* that affidavit contradicts the non-moving party's own prior deposition testimony." *Bricklayers Ins. & Welfare Fund v. Job Opportunities for Women, Inc.*, No. 16-cv-06935, 2019 WL 343243, at *4 n.7 (E.D.N.Y. Jan. 28, 2019) (emphasis in original). Thus, the sham affidavit rule "does not apply if the statements are not actually contradictory or the later sworn assertion addresses an issue that was not thoroughly or clearly explored before." *Id.* (quoting *Brown v. Henderson*, 257 F.3d 346, 252 (2d Cir. 2001)). Here, defendants fail to demonstrate that plaintiff's declaration introduces new facts or contradicts plaintiff's deposition testimony. Indeed, the declaration largely appears consistent with the testimony. *Compare* Pl.'s Tr. 49:22 ("I worked 57 hours a week"), *with* Pl.'s Decl. ¶ 10 ("During the months I worked for ZAD . . . I worked fifty-seven (57) hours each week[.]"). And some of the inconsistencies of which defendants complain appear to be clarifications of otherwise unclear testimony. *See e.g.*, Pl.'s Tr. 7:6–7 (testifying that he worked at ZAD between 2018 and 2022), 12:14–15 (testifying that he began working at ZAD in 2017); *see also* Pl.'s Decl. ¶ 2 ("I was an employee at [ZAD] from January 2018 to December 2022."). To that end, the Court is mindful that plaintiff cannot read or speak English, only reads and speaks Greek, and that his deposition was conducted through the assistance of an interpreter. Pl.'s Decl. ¶ 20; *see* Pl.'s Tr. 4. And in any event, to the extent portions of plaintiff's declaration are inconsistent with plaintiff's prior deposition testimony, the Court will simply disregard

employer status in light of the lack of other supporting evidence. Indeed, plaintiff does not point the Court to any evidence showing that any of the other *Carter* factors weigh in plaintiff's favor. Specifically, plaintiff provides no evidence that Nikolas: (1) supervised employee work schedules or work conditions; (2) determined the rate of payment; or (3) maintained employment records. *See* Opp'n 15–16; *see also Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 310 (S.D.N.Y. 2011) (concluding that *Carter* factors did not weigh in favor of finding that the individual defendant was an employer under the FLSA even where the defendant "mad[e] recommendations on hiring" because "[t]he record [was] also devoid of evidence that [the defendant] had any role in controlling work schedules, determining employee compensation, or maintaining employment records"); *Beng Khoon Loo v. I.M.E. Rest., Inc.*, No. 17-cv-025558, 2018 WL 4119234, at *7 (E.D.N.Y. Aug. 29, 2018) (concluding that no rational factfinder could find that the individual defendant was an employer under the FLSA and the NYLL even if the plaintiff supplied evidence sufficient to satisfy one of the *Carter* factors).

Moreover, plaintiff has adduced little to no evidence as to Nikolas's "authority over management, supervision, and oversight of [ZAD's] affairs in general." *Ethelberth*, 91 F. Supp. 3d at 352–53. The record before the Court suggests that Nikolas's role in ZAD's affairs after he transferred ownership to his son was limited to signing paychecks at his son's direction. *See* Anthony Tr. 29:23–25. Even in the light most favorable to plaintiff, this evidence alone is insufficient to demonstrate a genuine dispute as to Nikolas's employer status. *See Salinas*, 123 F. Supp. at 464; *see also Chen v. Lilis 200 W. 57th Corp.*, No. 19-cv-07654, 2023 WL 2388728, at *5 (S.D.N.Y. Mar. 7, 2023) ("[A]bsent other

---

those portions. *See Mazzone-Trani v. Donohue Cecere Funeral Home*, No. 08-cv-00060, 2010 WL 3282616, at *5 (E.D.N.Y. Aug. 13, 2010).

evidence of control, occasionally signing paychecks is not enough to trigger individual liability.") (collecting cases).[9]

Therefore, based on the record before the Court, no reasonable juror could conclude that Nikolas's "role within [ZAD], and the decisions it entail[ed], directly affect[ed] the nature or conditions" of plaintiff's employment.[10] *Tapia*, 906 F.3d at 61. Accordingly, defendants' motion for summary judgment as to Nikolas's individual liability must be granted, and defendant Nikolas Koulizakis is hereby DISMISSED from the case. *See Apple*, 2014 WL 5450030, at *10 (concluding that the individual defendants were not employers under the FLSA and the NYLL as a matter of law because "all meaningful decisions were made by the other defendants"); *Wu v. Chang's Garden of*

---

[9]    For this reason, plaintiff's reliance on *Chuchuca v. Creative Customs Cabinets Inc.* for the proposition that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation," is unavailing. Opp'n 15 (quoting *Chuchuca*, No. 13-cv-02506, 2014 WL 6674583, at *7 (E.D.N.Y. Nov. 25, 2014)). As that case makes clear, plaintiff must adduce sufficient evidence to support a reasonable inference that a corporate officer had "operational control," i.e., "controlled the terms and conditions of plaintiff's employment[.]" *Id.*, at *8. And as set forth above, plaintiff fails to present evidence demonstrating that Nikolas controlled the terms of plaintiff's employment.

[10]    In light of this conclusion, the Court also finds that Nikolas was not an "employer" for purposes of the NYLL. *See Sevilla v. House of Salads One LLC*, No. 20-cv-06072, 2022 WL 954740, at *3 n.7 (E.D.N.Y. Mar. 30, 2022) ("The NYLL's definition of 'employer' is identical to the definition under the FLSA."); *Velarde v. GW GJ, Inc.*, 914 F.3d 779, 783 (2d Cir. 2019) ("We have observed elsewhere that the FLSA and NYLL define employee in nearly identical terms. Accordingly, we construe the NYLL definition as the same in substance as the definition in the FLSA.") (2d Cir. 2019); *see also Apple v. Atl. Yards Dev. Co.*, No. 11-cv-05550, 2014 WL 5450030, at *6 n.4 (E.D.N.Y. Oct. 27, 2014) (concluding that the individual defendants were not employers under the FLSA and the NYLL pursuant to the same analysis and observing that "[t]he NYLL's definitions are nearly identical to the FLSA's"); *cf. Gao v. Jian Song Shi*, No. 18-cv-02708, 2021 WL 1949275, at *8 (E.D.N.Y. Apr. 30, 2021) ("A finding that an individual defendant is an employer under FLSA determines that she is an employer under NYLL."), *report and recommendation adopted sub nom.*, *Bin Gao v. ABC Corp.*, 2021 WL 1946322 (May 15, 2021).

*Storrs, LLC*, No. 08-cv-00746, 2010 WL 918079, at *6 (D. Conn. Mar. 11, 2010) (granting summary judgment in the individual defendant's favor and concluding that the defendant "did not have a meaningful role to justify imposing FLSA liability" because the defendant "lack[ed] [an] ownership interest or position as a decision maker" and only played a "limited" role in supervising and instructing workers); *see also Irizarry*, 722 F.3d at 107 ("[A] company owner, president, or stockholder must have at least some degree of involvement in the way the company interacts with employees to be a FLSA employer.").

### III. Minimum Wage and Overtime Claims

Apart from their argument that the protections afforded by the FLSA are inapplicable to plaintiff, defendants also seek summary judgment on plaintiff's overtime and minimum wage claims on the basis that those claims are refuted by documentary evidence in the record. *See* Mot. 12. Specifically, defendants argue that paychecks produced by plaintiff "flatly dispute[]" the notion that he was paid below the minimum wage and was not paid overtime. Mot. 13. Defendants argue that "[n]o checks support a rate below the minimum [wage]," Mot. 12, and in fact, the checks show that plaintiff "was paid in *excess* of minimum wage" during the "limited project work he performed at . . . [d]efendant[s'] shop during various times in 2018 and 2022." Mot. 14 (emphasis in original). Defendants do not meaningfully address the elements of plaintiff's overtime or minimum wage claims pursuant to the FLSA or the NYLL, nor do defendants raise arguments tailored to the differences in minimum wage and overtime claims. Instead, they argue that plaintiff "has failed to state a claim" for unpaid minimum wages or overtime pay based on the paychecks in the record. Mot. 14. The Court begins by analyzing plaintiff's overtime claims before turning to his minimum wage claims.

A. *Unpaid Overtime (Counts I and II)*

To sustain a claim for unpaid overtime wages, a plaintiff must prove that he performed overtime work "for which he was not properly compensated, and that the employer had actual or constructive knowledge." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *see also Tabriz v. Taste & Sabor LLC*, 577 F. Supp. 3d 314, 327 (S.D.N.Y. 2021) ("A successful claim for unpaid overtime requires proof that the plaintiff performed the work, with the employer's actual or constructive knowledge, and was not properly compensated."), *report and recommendation adopted*, 2022 WL 282918 (Jan. 31, 2022). The FLSA and the NYLL both require covered employers to pay covered employees' wages at a rate of one and a half times the employees' regular rate of pay for any hours worked above 40 hours in a given workweek. *See Vasquez v. NS Luxury Limousine Serv., Ltd.*, No. 18-cv-10219, 2021 WL 1226567, at *11 (S.D.N.Y. Mar. 31, 2021) (citing 29 U.S.C. § 207(a)(1)); *Feng v. Kelai Corp.*, 727 F. Supp. 3d 423, 448 (S.D.N.Y. 2024) (quoting 12 N.Y.C.R.R. § 146-1.4)). Moreover, the NYLL "adopts th[e] same standard" as the FLSA for unpaid overtime claims. *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013). Accordingly, "[c]ourt[s] apply the same analysis for FLSA and [NYLL] overtime claims[.]" *Alvarez v. Michael Anthony George Const. Corp.*, 15 F. Supp. 3d 285, 291 (E.D.N.Y. 2014); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (explaining that "New York's Labor Law is the state analogue to the federal FLSA" and that, aside from the FLSA's requirement for a nexus with interstate commerce and an employer's required amount of sales, the NYLL "otherwise mirrors" the FLSA).

For purposes of summary judgment, "an employee need only present sufficient evidence to show the amount and extent of the uncompensated work as a matter of just

and reasonable inference" if the employer's records are "inaccurate or inadequate." *Alvarez*, 15 F. Supp. at 291 (quoting *Kuebel*, 643 F.3d at 362). This is so because an employer's "fail[ure] to comply with [its] record keeping obligations" under the FLSA or the NYLL "should not work to penalize a plaintiff." *Francois v. Mazer*, No. 09-cv-03275, 2012 WL 653886, at *5 (S.D.N.Y. Feb. 28, 2012); *see also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work."). The Second Circuit has explained that "an employee's burden in this regard is not high." *Kuebel*, 643 F.3d at 362. Indeed, an employee may meet this burden "through estimates based on his own recollection." *Id.* If the employee meets his burden, "the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Alvarez*, 15 F. Supp. at 291 (quoting *Mt. Clemens*, 328 U.S. at 687–68)).

Here, plaintiff supplies sufficient evidence to support a reasonable inference that he worked uncompensated overtime hours. At the outset, the Court notes that the evidence shows that defendants failed to keep accurate and adequate records as to plaintiff's hours worked. In fact, Anthony testified that ZAD did not issue plaintiff wage statements, pay stubs, wage notices, nor did defendants otherwise "keep track of Mr. Kasseris's hours" during his tenure at ZAD. Anthony Tr. 14:23–16:9. The Court must consider the evidence plaintiff presents as to his hours worked in light of this context. *See*

*Francois*, 2012 WL 653886, at *5 ("Here, there is no indication that [the] defendants kept adequate records. This Court must then consider the limited evidence that does exist against this backdrop.").

Plaintiff's primary evidentiary support for his overtime claim rests upon his deposition testimony and a declaration he submitted in connection with his Opposition. In particular, plaintiff testified that he worked 57 hours per week throughout his tenure at ZAD. Pl.'s Tr. 49:19–22, 103:14–16; *see also* Pl.'s Decl. ¶ 10. Plaintiff further testified that his hours at ZAD were "Monday to Friday . . . 8:00 A.M. to 6:00 P.M.," and on Saturday from "8:00 A.M. to 3:00 P.M." Pl's Tr. 61:14–19; *see also* Pl.'s Decl. ¶ 11. In other words, plaintiff testified that his regular work schedule amounted to ZAD's hours of operation. *See* Counter 56.1 ¶ 16. Moreover, plaintiff testified that he was repeatedly not paid overtime during his employment. Pl.'s Tr. 92:15–17, 118:1–4, 125:13–14; *see also* Pl.'s Decl. ¶ 13.

This evidence is sufficient to satisfy plaintiff's prima facie burden, particularly in light of defendants' lack of records. *See Villada v. Grand Canyon Diner*, No. 22-cv-02782, 2024 WL 3875778, at *6 (E.D.N.Y. Aug. 19, 2024) (concluding that genuine issue of fact existed as to overtime claims even where "[t]he evidence that [the] [p]laintiff worked more than forty hours per week consist[ed] solely of her testimony"); *see also Lassen v. Hoyt Livery, Inc.*, 120 F. Supp. 3d 165, 173 (D. Conn. 2015) ("The Second Circuit . . . has held that a plaintiff's declaration that he worked more than forty hours just about every week and averaged from one to five hours of uncompensated overtime every week, was sufficient for a reasonable jury to conclude that he has shown the amount of his uncompensated work as a matter of just and reasonable inference.") (quoting *Kuebel*, 643 F.3d at 562)); *accord Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 3d 372,

381 (E.D.N.Y. 2012) ("Due to the lack of adequate records maintained by [the] [d]efendants . . . [the] [p]laintiffs need only submit sufficient evidence to show the amount and extent of the hours worked as a matter of just and reasonable inference. A plaintiff may meet this burden by relying solely on his own recollection.").

Because plaintiff has met his burden, "[d]efendants have the burden of coming forth with evidence of the precise amount of work performed or with evidence to negat[e] the reasonableness of the inference to be drawn from the employees' evidence." *Alvarez*, 15 F. Supp. at 294. They fail to do so. Defendants largely attempt to negate the inference by attacking plaintiff's credibility. *See, e.g.*, Mot. 8 ("Plaintiff . . . said he would produce checks showing his payments from 2018, 2019, and 2020[,] [h]e did not do so because he is not telling the truth[.]"); Mot. 11 ("Plaintiff's credibility must be questioned[.]"). But this is, of course, an improper consideration for the Court at the summary judgment stage. *See Alvarez*, 15 F. Supp. at 294 ("[B]road, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact, and a party's uncontroverted assertions will not be disregarded without affirmative evidence warranting an adverse inference.") (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261–62 (2d Cir. 2005)); *see also Fischl*, 128 F.3d at 55.

Defendants also gesture to the paychecks in the record and assert that they "show that [p]laintiff was paid time and one half . . . on the rare occasions where [p]laintiff worked full weeks or had overtime." Mot. 11. Defendants appear to suggest that because some paychecks are for different amounts, this necessarily shows that plaintiff was paid overtime for the weeks that he in fact worked overtime. That is, plaintiff was compensated for overtime as reflected by the paychecks for higher amounts. *See* Mot. 11.

This argument is unsupported by the evidence in the record. For one, the paychecks themselves contain no information indicating the number of hours compensated, and defendants do not cite a single other piece of record evidence to support their argument that the higher paychecks necessarily include wages for overtime. *See generally* Decl. of Kevin O'Donoghue Ex. I; *see also* Mot. 11. Second, plaintiff has adduced evidence explaining the discrepancies in payments unrelated to overtime pay: "when [defendants] saw that [plaintiff] felt [that they] w[ere] paying [him] too little money, and [he] was about to leave, then [defendants] would increase and pay [him] a little more[.]" Pl.'s Tr. 55:9–16. Finally, even if the larger paychecks reflect that plaintiff was paid overtime on some occasions, plaintiff presents evidence that he worked overtime every week as part of his regular work schedule. *See* Pl's Tr. 61:14–19; *see also* Pl.'s Decl. ¶ 11. Thus, defendants' argument amounts to a dispute over whether plaintiff in fact worked overtime every week that he was employed as he so testified; in other words, "a triable issue as to whether plaintiff worked overtime and, if so, how much." *Francois*, 2012 WL 653886, at *5. Therefore, defendants fail to provide sufficient evidence negating the reasonableness of the inference to be drawn from plaintiff's evidence, and summary judgment is not warranted. *See id.* (concluding that the plaintiff's statement in her "declaration submitted in opposition to th[e] [summary judgment] motion that she regularly worked in excess of 40 and 50 hours" along with deposition testimony "raise[d] a triable issue" on overtime claims); *see also Severino v. 436 W. LLC*, No. 13-cv-03096, 2015 WL 12559893, at *7 (S.D.N.Y. Mar. 19, 2025) (reasoning that "conflicting testimony" of the plaintiff on the one hand and the individual defendants on the other was "more than sufficient to create a genuine dispute of material fact as to whether [the plaintiff] ever worked more than forty hours in a week"); *Villada*, 2024 WL 3875778, at *6 (same).

28

In sum, plaintiff raises a triable issue of fact as to whether he worked overtime hours—and to what extent—and whether he was uncompensated for such hours. Therefore, defendants' motion for summary judgment as to plaintiff's overtime claims pursuant to the FLSA (Count I) and the NYLL (Count II) is DENIED.

### B.  Minimum Wage Violations (Counts III and IV)

To sustain his minimum wage claims, plaintiff must provide sufficient evidence showing "that the amount of compensation [he] received result[ed] in a straight-time hourly rate that is less than the applicable" minimum wage. *Moncion v. Stephen Sondheim Theater*, No. 22-cv-01025, 2022 WL 889377, at *2 (S.D.N.Y. Mar. 25, 2022). The applicable minimum wage under the FLSA is the federal minimum wage which was, during the duration of plaintiff's employment at ZAD, $7.25 per hour. *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 370–71 (E.D.N.Y. 2022); *see Pineda-Herrea v. Da-Ar-Da, Inc.*, No. 09-cv-05140, 2011 WL 2133825, at *5 (E.D.N.Y. May 26, 2011) ("[F]or non-overtime wages, the FLSA requires only that employers pay the minimum wage rates set by federal law."). The applicable minimum wage under the NYLL is New York State's minimum wage which was $13 per hour from December 1, 2017 through December 30, 2018, and $15.00 per hour from December 31, 2018 onward. *Heras v. Metro. Learning Inst., Inc.*, No. 19-cv-02694, 2025 WL 1166978, at *13 (E.D.N.Y. Feb. 28, 2025) (citing N.Y. Lab. Law § 652); *see also Savor Health, LLC v. Day*, No. 19-cv-09798, 2022 WL 912236, at *6 (S.D.N.Y. Mar. 29, 2012).

Because the FLSA and the NYLL "are analytically nearly identical," the minimum wage claims under both statues may be analyzed together. *Fangrui Huang v. GW of Funding I, Inc.*, No. 17-cv-03181, 2019 WL 145528, at *4 (E.D.N.Y. Jan. 9, 2019); *see also Albertin v. Nathan Littauer Hosp. & Nursing Home*, 537 F. Supp. 3d 243, 264 n.15

(N.D.N.Y. 2021) ("The analysis for minimum wage claims under NYLL mirrors that of FLSA."). The only relevant difference between the two claims here is that the "NYLL sets its minimum hourly wage at an amount higher than FLSA's floor." *Velarde*, 914 F.3d at 783 n.5; *see also Espinoza v. La Oficina Bar Corp.*, No. 20-cv-01237, 2022 WL 987429, at \*11 (E.D.N.Y. Mar. 1, 2022) ("The NYLL is quite similar to the FLSA in that it requires employers to pay a minimum hourly wage to employees (albeit at a higher rate)."), *report and recommendation adopted*, 2022 WL 985836 (Mar. 31, 2022).

Defendants again principally argue that summary judgment in their favor is warranted based on the paychecks in the record. Defendants contend that these checks "all show sporadic work and payment in excess of the minimum wage." Mot. 6. As previously discussed, the paychecks do not contain information as to plaintiff's hourly rate, nor the number of hours worked. Instead, they simply indicate an amount that plaintiff was paid by ZAD on a particular date. *See generally* Decl. of Kevin O'Donoghue Ex. I. Therefore, the probative value that the paychecks have on plaintiff's minimum wage claims, if any, turns on how many hours plaintiff worked in a particular week. By way of illustration, ZAD issued plaintiff a check for $600 on March 8, 2022. Decl. of Kevin O'Donoghue Ex. I at 17. If, for example, plaintiff worked at ZAD for 20 hours in that pay period, his hourly rate would be $30 per hour, and he would have no minimum wage claim. *See Garcia Ramos v. DNC Food Serv. Corp.*, No. 19-cv-02967, 2020 WL 2832776, at \*7 (S.D.N.Y. June 1, 2020) ("[T]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."). Thus, whether the checks "disprove[]," Mot. 12, plaintiff's

minimum wage claim depends on how many hours plaintiff worked at ZAD in each pay period, which the parties dispute, *see* Pl.'s Decl. ¶ 10; Anthony Decl. ¶ 11.

However, this dispute does not necessarily preclude summary judgment in defendants' favor, at least not as to plaintiff's FLSA minimum wage claim. The evidence adduced by plaintiff indicates that he was paid "approximately $600.00 weekly for working fifty-seven (57) hours in a week." Pl.'s Decl. ¶ 13; *see also* Decl. of Kevin O'Donoghue Ex. I at 17, 21. Plaintiff does not produce evidence that he worked more than 57 hours per week at any point during his tenure. Thus, even accepting plaintiff's statement that he worked 57 hours each week as true, his regular hourly rate of pay would be more than $10 and exceed the applicable federal minimum wage. Therefore, as a matter of law, plaintiff cannot state an FLSA minimum wage claim. *See Abe v. Yamaguchi & Friends, Inc.*, No. 22-cv-03164, 2024 WL 3875779, at *5 (E.D.N.Y. Aug. 20, 2024) ("An employee cannot state a claim for a minimum wage violation unless his average hourly wage falls below the federal minimum wage."); *see also Bin Gao v. Jian Song Shi*, No. 18-cv-02708, 2019 WL 3936810, at *8 (E.D.N.Y. Aug. 20, 2019) (granting the defendant summary judgment as to minimum wage claims even when "constru[ing] the evidence in the light most favorable to [the] plaintiff," because the plaintiff's deposition testimony established that his alleged regular rate of pay exceeded the federal minimum wage).

This evidence does, however, preclude summary judgment as to plaintiff's NYLL minimum wage claim. This is so because plaintiff presents sufficient evidence such that a reasonable juror could conclude that his hourly rate fell below New York State's minimum wage. Defendants attempt to resist this conclusion largely by reprising their arguments as to plaintiff's credibility and by relying on Anthony's testimony that plaintiff's "pay was between $20–$21 hourly[.]" Mot. 11. But again, conflicting testimony as to how many

hours plaintiff worked—and, accordingly, what hourly rate the paychecks reflect—is to be resolved by the trier of fact, not by the Court on a motion for summary judgment. *See Frost v. Lentex Co., LLC*, No. 20-cv-05313, 2022 WL 17968058, at *7 (S.D.N.Y. Dec. 27, 2022) ("In light of this conflicting testimony, the [c]ourt cannot determine the number of hours [the] plaintiff worked within the proper scope of his potential employment without making a credibility determination, which would be improper at this stage. And because ascertaining the number of hours plaintiff worked is necessary to determine whether his compensation met or exceeded the relevant minimum wage thresholds, summary judgment on plaintiff's minimum wage claims must be denied."); *Paguay v. Buona Fortuna, Inc.*, No. 11-cv-06266, 2013 WL 3941088, at *4 (S.D.N.Y. July 31, 2013) (same).

Accordingly, defendants' motion for summary judgment is granted as to plaintiff's FLSA minimum wage claim (Count III) and denied as to plaintiff's NYLL minimum wage claim (Count IV). Count III is hereby DISMISSED. *Accord Jimenez v. W&M Servs. Inc.*, No. 22-cv-05061, 2025 WL 916921, at *3 (E.D.N.Y. Mar. 25, 2025) (dismissing FLSA minimum wage claim with prejudice because the "[p]laintiff earned more than the federal minimum wage," but sustaining NYLL minimum wage claim because the plaintiff plausibly alleged he was paid less than New York State's minimum wage).

## IV.    Statute of Limitations

In addition to their arguments about the merits, the parties dispute which statute of limitations applies to plaintiff's FLSA claims. *See* Mot. 14–15; Opp'n 16–17. Generally, a two-year statute of limitations applies for FLSA violations. *See* 29 U.S.C. § 255. However, this period is extended to three years where an employer's violations are found to be "willful." *Id.* "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Young*

*v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009). Unsurprisingly, defendants contend that plaintiff fails to meet his burden of "establishing willfulness," and thus the shorter statute of limitations applies. Mot. 15. On the other hand, plaintiff argues that he has established that defendants were reckless, specifically because defendants failed "to provide time sheets, wage and hour statements, [and] pay stubs[,]" Opp'n 16, and thus the longer statute of limitations applies. Opp'n 16.

The Court need not decide which statute of limitations applies for four interrelated reasons. First, plaintiff's remaining federal claim—his FLSA overtime claim—is within the two year statute of limitations. This action was commenced on February 9, 2023. *See* Compl. And plaintiff presents sufficient evidence that a reasonable juror could conclude he was not paid overtime wages throughout 2022. *See* Pl.'s Decl. ¶¶ 8, 13; *see also* Section III.A. Therefore, plaintiff's overtime claim is not completely time-barred irrespective of which statute of limitations applies. Second, the statute of limitations for NYLL overtime and minimum wage claims is six years, regardless of willfulness. *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 273 (E.D.N.Y. 2008) (citing N.Y. Lab. Law § 663(3)). Third, plaintiff "can recover under either the FLSA or NYLL" for his claims, "but not for both." *Vasquez*, 2021 WL 1226567, at *13; *see also Duran v. M.S.T.A.S. Ltd.*, No. 20-cv-09228, 2023 WL 7304817, at *3 (S.D.N.Y. Sept. 20, 2023) ("Although a defendant may be simultaneously liable under both the FLSA and NYLL, a plaintiff may not recover damages under both the FLSA and NYLL for the same injury."), *report and recommendation adopted*, 2023 WL 7126296 (Oct. 30, 2023). Fourth, "[w]here both the FLSA and NYLL apply to a plaintiff's claims, courts apply the statute that provides the greatest measure of damages." *Duran*, 2023 WL 7304817, at *3.

Here, plaintiff's claims began accruing when he commenced his employment in 2018, more than three years before he filed his complaint. Pl.'s Decl. ¶ 2. Accordingly, "the limitations period under the NYLL will provide [him] the greatest recovery, as it will encompass [p]laintiff's entire . . . period of employment." *Duran*, 2023 WL 7304817, at *3. In other words, because the NYLL statute of limitations applies, "the issue of whether [the] [d]efendants' violations were willful, and thus whether a two or three-year statute of limitations applies under FLSA, does not impact [p]laintiff['s] recovery." *Vasquez*, 2021 WL 1226567, at *13. Thus, the Court need not decide which statute of limitations applies to plaintiff's FLSA claims. *See id.* (reasoning on motion for summary judgment that "the [c]ourt need not decide the issue of willfulness for the purposes of the FLSA statute of limitations" even where "[t]he parties dispute[d] which statute of limitations under FLSA applie[d] to [the] [p]laintiffs' claims" because it would not impact recovery given that the claims were "without dispute timely under the NYLL").

## V.    Remaining NYLL Claims

Plaintiff brings four NYLL claims distinct from his overtime and minimum wage claims: (1) a claim for failure to pay manual worker wages on a weekly basis in violation of NYLL § 191 (Count V); (2) a claim for failure to provide timely payments in violation of NYLL § 191(1)(d) (Count VI); (3) a claim for failure to provide accurate wage statements in violation of NYLL § 195(3) (Count VII); and (4) a claim for failure to provide required wage notices in violation of NYLL § 195(1) (Count VIII).

### A.  Timely Payment Claims (Counts V and VI)

The SAC alleges two claims for relief pertaining to the frequency and timing of when plaintiff was paid. First, a claim that defendants failed to pay plaintiff his "earned wages as a manual worker . . . within seven (7) days of the end of the week in which they

were earned[,]" as required by NYLL § 191(1)(a)(i). SAC ¶ 97. Second, a claim that defendants "failed to timely pay" plaintiff as required by NYLL § 191(1)(d). Defendants move for summary judgment on both Counts on the basis that "the Second Department does not recognize a private right of action" pursuant to NYLL § 191. Mot. 13; *see also* Mot. 8. Defendants also argue that "the evidence shows [that plaintiff] was paid weekly when he worked regularly[.]" Mot. 8.

In contrast to his other claims, plaintiff fails to respond to any of defendants' arguments on these claims in his briefing. *See generally* Opp'n. Indeed, aside from a cursory mention of the claims—in the context of discussing their initial inclusion in the SAC—plaintiff does not address them whatsoever. *See* Opp'n 10. Therefore, the Court deems plaintiff to have conceded defendants' arguments and finds plaintiff to have abandoned these claims. *See Blake v. Race*, 487 F. Supp. 2d 187, 217 (E.D.N.Y. 2007) ("Because [the] plaintiff's opposition papers did not address [the] defendants' motion for summary judgment on this claim, the claim is deemed abandoned and summary judgment could be granted on that basis alone.") (collecting cases); *see also Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 110 (S.D.N.Y. 2022) ("Courts routinely hold that where a plaintiff fails to address the defendants' arguments against or even mention several of his or her claims, those claims are deemed abandoned."); *accord Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) ("[S]ummary judgment is known as a highly useful method of narrowing the issues for trial, it follows that preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses. Accordingly, generally, . . . a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others, and a court

may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

Therefore, defendants' motion for summary judgment is granted as to plaintiff's claims for failure to pay weekly wages (Count V) and failure to provide timely payments (Count VI) under the NYLL. Counts V and VI are hereby DISMISSED.

B.  *Wage Notice and Wage Statement Claims (Counts VII and VIII)*

Plaintiff brings two claims for relief pertaining to defendants' alleged violation of the NYLL's wage notice and statement provisions. Specifically, plaintiff asserts that he "never received a wage notice" apprising him of his rate of pay and concomitant rights as required under NYLL § 195(1) within 10 days of commencing employment at ZAD. *See* Opp'n 19; *see also* SAC ¶¶ 108–14. Plaintiff also brings a claim for defendants' alleged violation of the Wage Theft Prevention Act, NYLL § 195, because plaintiff "never received any wage statements as required by the NYLL." *See* Opp'n 21; *see also* SAC ¶¶ 115–21.

Defendants concede that they never gave plaintiff wage notices. *See* Reply 10 ("Defendants do not claim they gave wage notices[.]"). Defendants also concede that they failed to provide wage statements as required by NYLL § 195. *See* Reply 10; *see also* Anthony Tr. 14:23–16:9. In support of their Motion, defendants instead rely on their argument that they "were not employers subject to the provisions requiring wage notices" and wage statements to be provided to plaintiff because he "was an independent contractor[]." Mot. 10. This argument fails in light of the Court's conclusion that plaintiff has adduced sufficient evidence to raise a genuine dispute as to whether defendants were plaintiff's employers. *See* Part II.

Nevertheless, the Court must assure itself that it has jurisdiction over these claims. *See Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 543 (S.D.N.Y. 2014)

("Federal courts are obligated to consider whether subject matter jurisdiction has been established, even *sua sponte.*") (citing *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006)). Specifically, plaintiff must establish that he has Article III standing to pursue each and every claim he raises. *See Villada*, 2024 WL 3875778, at *9 ("Standing is not dispensed in gross. Rather, the plaintiff must show standing separately for each claim he or she presses.") (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). A plaintiff has standing only if "(1) he suffered an injury in fact which is concrete, particularized, and actual or imminent; (2) there is a fairly traceable causal connection between his injury and the defendant's conduct; and (3) a favorable decision would provide redress for his injury." *Chisolm-Lucas v. Am. Airlines, Inc.*, 793 F. Supp. 3d 477, 482 (E.D.N.Y. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

The Second Circuit recently clarified that a plaintiff seeking to maintain wage notice and wage statement claims under the NYLL must adequately show "a concrete injury-in-fact resulting from the failure to provide the wage notices and wage statements." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 302–03 (2d Cir. 2024). This is so because "statutorily noncompliant" violations of the NYLL that are "divorced from any concrete harm[,] . . . do not suffice for Article III standing." *Id.* at 306 (quoting *TransUnion*, 594 U.S. at 440). Accordingly, a plaintiff must show a "downstream harm." *Id.* at 308; *see also Fortune v. Vivendi Ticketing US, LLC*, No. 24-cv-08415, 2025 WL 2443681, at *5 (S.D.N.Y. Aug. 25, 2025) ("[A] plaintiff must also allege downstream consequences from failing to receive the required information.").

Additionally, a plaintiff must demonstrate "some causal connection between the lack of accurate notices and the downstream harm." *Guthrie*, 113 F.4th at 308. Thus, "unless the plaintiff-employee can show that he or she would have undertaken . . .

37

advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages." *Id.* Inaccurate or inadequate notices that "prevent[] the employee from obtaining full payment of wages in a timely fashion" *may* suffice to demonstrate an injury-in-fact. *Id.* at 308–09. Still, a plaintiff "cannot assume this conclusion without analysis or rely on speculation or conjecture"—he must adduce evidence "support[ing] a plausible theory as to *how* he was injured by the defendants' failure to provide the required documents." *Id.* (emphasis in original).

Plaintiff fails to establish Article III standing for his wage notice and wage statement claims. First, the SAC is devoid of any allegations regarding a downstream harm from defendants' alleged violations. *See* SAC ¶¶ 108–21. The SAC simply alleges that defendants violated the statute, but does not "allege that plaintiff suffered an actual injury, let alone a causal connection between that injury and defendants' failure to provide accurate notices." *Li v. Dolar Shop Rest. Grp. LLC*, No. 16-cv-01953, 2025 WL 2782535, at *2 (E.D.N.Y. Sept. 30, 2025); *see also Villada*, 2024 WL 3875778, at *10 ("[The] [p]laintiff does not link any legally cognizable injury that she personally experienced to [the] [d]efendants' failure to provide wage statements and wage notices under the NYLL. [The] [p]laintiff instead merely alleges that the [d]efendants failed to comply with these statutory mandates. Without some tangible downstream harm flowing from the statutory violations, [the] [p]laintiff cannot have suffered a concrete injury resulting from [the] [d]efendants' violations of the NYLL's wage statement and wage notice requirements.").

Moreover, plaintiff's evidence fails to establish "a causal connection between the lack of a wage notice or a wage statement and any downstream harm." *Guthrie*, 113 F.4th

38

at 302–03. It is not enough for plaintiff to identify a downstream harm; he must also present evidence "support[ing] a plausible theory as to *how* he was injured by the defendants' failure to provide the required documents." *Id.* Yet, plaintiff fails to cite to any record evidence demonstrating that he "would have undertaken advocacy and avoided some actual harm or obtained some actual benefit if accurate notices had been provided." *Giancotti v. Pizzarotti LLC*, No. 23-cv-03457, 2025 WL 2607606, at \*18 (S.D.N.Y. Sept. 9, 2025). Plaintiff did not testify about the lack of wage notices and wage statements during his deposition at all, much less what he would have done if accurate notices had been provided. *See generally* Pl.'s Tr. Thus, the Court is left to speculate as to whether plaintiff would have undertaken advocacy on his behalf if he was provided accurate notices and statements, which is insufficient to meet plaintiff's burden of establishing standing. *See Giancotti*, 2025 WL 2607606, at \*18 (concluding that the plaintiff failed to meet his burden at the summary judgment stage to show causal connection between NYLL violation and downstream harm where plaintiff's affidavit asserted that the plaintiff "never received wage notices about his pay or what he was entitled to, which delayed him filing his labor complaints against [the] [d]efendants, and that his wage statements were often incorrect such that he was delayed in and impaired in seeking relief for his short pay"); *Nereo v. Shleppers Holdings, LLC*, No. 22-cv-09505, 2025 WL 936570, at \*11 (S.D.N.Y. Mar. 27, 2025) (reasoning that the plaintiffs appeared to lack standing for wage statement and wage notice claims because the plaintiffs "offer[ed] no evidence to show what [t]he [p]laintiffs would have done differently to obtain higher wages had they been provided wage statements and wage notices").

Therefore, because plaintiff has not established standing to assert these claims, the Court appears to lack subject matter jurisdiction over plaintiff's wage notice and wage

statement claims. *See Giancotti*, 2025 WL 2607606, at *18 (citing *Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017)). However, in light of the Court raising the issue sua sponte, plaintiff is ordered to show cause, with supporting evidence, why his wage notice and statement claims should not be dismissed for lack of subject matter jurisdiction. *Nereo*, 2025 WL 936570, at *11; *see also Villada*, 2024 WL 3875778, at *10 (explaining that "the Second Circuit has instructed district courts to provide an adversely affected party with notice and opportunity to be heard before dismissing an action sua sponte for lack of subject matter jurisdiction").

## VI.    Sanctions

Defendants also move for sanctions against plaintiff's counsel pursuant to Rules 11 and 30(d)(2) of the Federal Rules of Civil Procedure in connection with plaintiff "failing to discontinue the action in total or amend to remove claims," as well as counsel's conduct during depositions. *See* Mot. 18, 20. The Court defers ruling on defendants' request for sanctions and takes the motion under advisement. *See Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 420 (S.D.N.Y. 2003) ("Courts should, and often do, defer consideration of certain sanctions motions until the end of the litigation to gain a full sense of the case. . . . This is a sensible practice where[,] as here[,] the thrust of the sanctions motion is that institution of the case itself was improper.").

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted in part, denied in part. The Court defers ruling on defendants' motion for sanctions. Defendants' motion to exclude expert witnesses is denied as moot. The Clerk of Court is respectfully directed to dismiss defendant Nikolas Koulizakis from the case. Plaintiff is ordered to show cause by January 20, 2026, why his wage notice and statement claims should not be dismissed for lack of subject matter jurisdiction.

In accordance with the Court's Individual Practice Rule IV.A, the parties shall file a proposed joint pretrial order by February 11, 2026.

**SO ORDERED.**

_/s/ Natasha C. Merle_
NATASHA C. MERLE
United States District Judge

Dated: January 12, 2026
Brooklyn, New York